# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL OCTAVIO TENA HERAS,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. CV 17-01935-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. **INTRODUCTION**

Plaintiff Gabriel Octavio Tena Heras ("Plaintiff") challenges the Commissioner's denial of his application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II. **PROCEEDINGS BELOW**

On June 3, 2013, Plaintiff protectively applied for SSI alleging disability beginning April 30, 2013. (Administrative Record ("AR") 38, 43, 48-49.) His application was denied initially on July 26, 2013, and upon reconsideration on January 23, 2014. (AR 64, 75.) On January 31, 2014, Plaintiff filed a written

request for hearing, and a hearing was held on January 7, 2016. (AR 82.) Represented by counsel and assisted by an interpreter, Plaintiff appeared and testified, along with an impartial vocational expert ("VE") and an impartial medical expert. (AR 24-37.) On January 25, 2016, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[1] since April 30, 2013. (AR 18.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1.) Plaintiff filed this action on March 10, 2017. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 30, 2013, the alleged onset date ("AOD"). (AR 13.) At **step two**, the ALJ found that Plaintiff has the following severe impairments: arthritis, diabetes mellitus, hypertension, and coronary artery disease. (*Id.*) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 14.)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform medium work . . . except this individual should not work at extremes of heat or cold, can occasionally, but not frequently climb ladders, and he should avoid working at unprotected heights.

(*Id.*)

///
///

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

At **step four**, based on Plaintiff's RFC and the VE's testimony, the ALJ found that Plaintiff was capable of performing past relevant work as a drywall applicator, and therefore the ALJ did not proceed to **step five**. (AR 17.) Accordingly, the ALJ determined that Plaintiff has not been under a disability from the AOD through the date of the decision. (AR 18.)

### III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins,* 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination

and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff raises the following issues for review: (1) whether the ALJ properly considered the medical evidence in assessing Plaintiff's RFC; (2) whether the ALJ properly discredited Plaintiff's testimony; and (3) whether the ALJ's conclusion at step four is supported by substantial evidence. (JS 3-4.) Plaintiff contends that the ALJ erred in his consideration of Plaintiff's testimony, and that the RFC assessment and "step four" findings are not supported by substantial evidence. (*See* JS 4, 8, 16.) The Commissioner disagrees. (*See* JS 8, 12, 20.) For the reasons below, the Court agrees with the Commissioner.

### A. The ALJ's Credibility Determination Is Supported By Substantial Evidence[2]

Plaintiff argues that the ALJ failed to properly consider Plaintiff's subjective testimony. (JS 9-10.) The Commissioner argues that the ALJ's credibility findings are supported by substantial evidence. (JS 16.)

#### 1. Plaintiff's Testimony

Plaintiff testified with the assistance of an interpreter. (AR 30.) Plaintiff stated that he previously worked in construction doing framing and drywall handling. (*Id.*) At his job, Plaintiff lifted and carried 50 pounds by himself without using moving equipment devices. (AR 30-31.)

Plaintiff explained that he stopped working in 2013 because he began to feel ill and suffered from fainting spells. (AR 31.) Plaintiff stated that his sugar level was "out of control" and he had a lot of pain in his knees and joints. (*Id.*) Plaintiff

---

[2] Because subjective symptom testimony is one factor that the ALJ must consider when assessing a claimant's RFC, the Court addresses the issue of credibility first before discussing the overall RFC determination.

4

also stated that he has problems with his hands, and his fingers are "twisting more and more." (AR 32.) Plaintiff can lift and carry about the weight of a gallon of milk, but he cannot hold the weight very long because his joints hurt. (*Id.*)

Plaintiff testified that he can stand for a maximum of 50 minutes before his feet begin to fall asleep and cause him pain. (*Id.*) Plaintiff explained that he also has problems sitting because all of his joints hurt from his waist up to his neck, "all the joints on [his] body." (*Id.*) Plaintiff stated that he can sit for 15 to 20 minutes before he needs to walk. (*Id.*) When he gets up, he feels like he is going to faint, which Plaintiff thinks is due to his high blood pressure. (AR 32-33.) Plaintiff also testified that he can walk for only one block before he feels a "burning sensation" in his chest and needs to sit. (AR 33.) Plaintiff stated that he assumes that his chest pain is caused by a problem with his heart. (*Id.*)

Plaintiff testified that he is taking medication for his heart, pain, cholesterol, and diabetes as prescribed. (*Id.*) Plaintiff stated that he does not know if he has side effects from his medications, but sometimes he feels ill because he takes a lot of medication. (AR 34.) Plaintiff is not taking medication for depression, but he attended six months of psychological classes that ended about a month and a half before the hearing. (AR 33-34.)

During the day, Plaintiff takes his grandson to school, picks him up, and stays at home with him while Plaintiff waits for his wife to come home. (AR 33.)

### 2. **Applicable Legal Standards**

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting

*Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id*. The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

### 3. Discussion

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (AR 15.) The ALJ relied on the following reasons: (1) lack of objective medical evidence to support the alleged severity of symptoms; (2) activities of daily living; (3) routine and conservative treatment; and (4) lack of mental health treatment. (AR 16-17.) No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

#### a. Reason No. 1: Lack of Objective Medical Evidence

The ALJ found that the medical evidence "has not identified an impairment that would correspond in severity to the claimant's allegation." (AR 15.) The lack of supporting objective medical evidence cannot form the sole basis for discounting testimony, but it is a factor that the ALJ may consider in making a credibility determination. *Burch*, 400 F.3d at 681.

The ALJ noted that Plaintiff has a history of uncontrolled type-II diabetes mellitus, osteoarthrosis, joint pain involving the lower leg, and hypertensions. (AR 15; *see, e.g.*, AR 252-53, 262-78.) The ALJ then summarized Plaintiff's medical records. (AR 15-16.)

///

X-rays taken in April 2012 showed generalized osteopenia, atherosclerotic vessel disease, mild thoracic scoliosis, and hypertrophic degenerative changes in the thoracic and lumbar spine. (AR 298.) In June 2012, x-rays of both knees were negative, aside from mild spurring from the superior left patella. (AR 294.) X-rays of Plaintiff's right hand revealed degenerative changes at the index, middle, and little finger distal interphalangeal ("DIP") joints, most prominent in the middle finger. (AR 296.) X-rays of Plaintiff's left hand also revealed degenerative changes in the left index finger DIP joint. (*Id.*) A February 2013 x-ray of Plaintiff's right knee revealed mild spurring at the superior aspect of the patella, but no evidence of acute fracture. (AR 280.) A May 2013 lab report showed high total cholesterol of 228, high glucose of 189, and hemoglobin A1c of 8.0, noted as being consistent with diabetes. (AR 254.)

On October 17, 2013, Plaintiff was treated at High Desert Hospital for multiple joint pain and medication refills. (AR 320-24.) Plaintiff was observed to be alert and in no acute distress. (AR 321.) His lungs were clear to auscultation bilaterally and his heart was of regular rate and rhythm with no murmurs, rubs, or gallops. (*Id.*) A diabetic foot exam showed normal monofilament sensation, no calluses, no ulcers, and normal pulses. (*Id.*) Examination of Plaintiff's hands showed Heberden's nodes present in the DIP joints. (*Id.*)

In December 2013, x-rays showed very mild degenerative changes of the interphalangeal joints of Plaintiff's left hand. (AR 346.) Results were otherwise unremarkable in this hand. (AR 346.) Plaintiff's DIP joint of the right middle finger had soft tissue swelling, moderate degenerative changes with a moderate-to-large posterior osteophyte formation, and some flexion deformity. (*Id.*) Mild degenerative changes of the remaining DIP joints, minimal degenerative changes of the proximal interphalangeal joints, and very minimal degenerative changes of the first metacarpal phalangeal joint were also observed in Plaintiff's right hand. (AR 347.) Plaintiff's left knee joint showed very early and very mild generative

changes, and his right knee showed only minimal degenerative changes. (AR 347-48.)

On February 10, 2015, Plaintiff underwent an exercise stress test. (AR 402.) Due to abnormal results and chest pains, Plaintiff was referred to Antelope Valley Hospital and admitted. (AR 364, 368, 375, 382.) Upon admission, his blood pressure and vital signs were largely normal. (AR 375-76, 380.) No cardiovascular abnormalities were noted, and Plaintiff's cardiovascular and respiratory assessments were normal. (AR 376; *see* AR 380.) A coronary angiography was performed, which revealed some obstruction in the left anterior descending artery, right coronary artery, and right posterior descending artery. (AR 385.) Plaintiff was diagnosed with hypertension, type-II diabetes, dyslipidemia, chest pain, and unstable angina, most likely secondary to coronary artery disease. (AR 377.)

The ALJ thoroughly considered Plaintiff's medical records and found that they did not support Plaintiff's allegations of disabling symptoms and limitations. *See Reddick*, 157 F.3d at 725. The ALJ was permitted to rely on the normal examination results and lack of significant medical findings in assessing the credibility of Plaintiff's testimony. *See Garza v. Astrue*, 380 F. App'x 672, 674 (9th Cir. 2010) (finding that an ALJ properly considered a claimant's normal exam findings when noting a lack of objective medical evidence to support the claimant's allegations).

The Court finds that this is a clear and convincing reason, supported by substantial evidence, for discounting Plaintiff's credibility.

### b. Reason No. 2: Activities of Daily Living

The ALJ noted that Plaintiff takes his 7-year-old grandson to school and cares for him at home after school, which is "not consistent with an assertion of total disability." (AR 16-17.) As part of the credibility determination, the ALJ may consider inconsistencies between the claimant's testimony and his other statements, conduct, and daily activities. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th

Cir. 1997); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount a claimant's credibility. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). But a claimant need not be utterly incapacitated to obtain benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *accord Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

The fact that Plaintiff cares for his grandson does not detract from his overall credibility, as the record does not show that this consumed a substantial part of Plaintiff's day. Further, the mere ability to perform some tasks is not necessarily indicative of an ability to perform work activities because "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603; *see also Molina*, 674 F.3d at 1112-13 (the ALJ may discredit a claimant who "participat[es] in everyday activities indicating capacities that are transferable to a work setting"). The critical difference between such activities "and activities in a full-time job are that a person has more flexibility in scheduling the former . . . , can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (cited with approval in *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014)). Here, Plaintiff testified that he takes his grandson to and from school, and then his grandson is with him while they wait for Plaintiff's wife to come home. (AR 33.) The ALJ assumed that caring for a young child "can be quite demanding emotionally, without any particular assistance." (AR 17.) But

without additional information about the nature of Plaintiff's childcare activities, this cannot be the basis for an adverse credibility finding. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (finding that, with almost no information in the record about the claimant's childcare activities, "the mere fact that [the claimant] cares for small children does not constitute an adequately specific conflict with her reported limitations").

The Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### c. Reason No. 3: Routine and Conservative Treatment

The ALJ also observed that Plaintiff's treatment for physical impairments "has not been so extensive or prolonged that work activity would be precluded for any continuous period of twelve months" and that "treatment has been essentially routine and/or conservative in nature." (AR 17.) An ALJ may discount a claimant's credibility based on routine and conservative treatment. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting a plaintiff's complaint "that she experienced pain approaching the highest level imaginable" as "inconsistent with the 'minimal, conservative treatment' that she received").

The ALJ noted that Plaintiff's diabetes mellitus and hypertension are poorly controlled, but there is no evidence of end organ damage, kidney problems, or stroke symptoms. (AR 17.) Therefore, the ALJ concluded that Plaintiff's hypertensive state has no effect on his ability to function. (*Id.*) The ALJ also noted that Plaintiff's ongoing treatment for his impairments is primarily for monitoring and to refill prescriptions. (AR 17.)

Although Plaintiff's diabetes was previously noted as uncontrolled, records also indicated that Plaintiff did not adhere to instructions and medication

compliance. (*See* AR 262-63.) Later, during routine visits at High Desert Health Systems, Plaintiff was encouraged to continue his medications and his diet and exercise plans. (*See* AR 418-21, 429, 431-33.) Because Plaintiff's treatment primarily consisted of monitoring and medication, the ALJ permissibly discounted Plaintiff's credibility based on his conservative treatment plan. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

The Court finds that this reason is a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### d. Reason No. 4: Lack of Mental Health Treatment

Finally, the ALJ noted that despite Plaintiff's alleged depression, he did not seek treatment from psychiatrists or psychologists. (AR 17.) The ALJ also noted that Plaintiff has not taken any psychotropic medication or had any inpatient or outpatient mental health counseling or treatment. (*Id.*) The ALJ stated that it was reasonable to assume that someone with severe mental problems would seek treatment in an attempt to lessen the condition or its effects. (*Id.*) The ALJ determined that Plaintiff's failure to seek treatment indicates that his limitations are not as severe as alleged. (*Id.*)

First, the Ninth Circuit has criticized the practice of discrediting evidence based on a lack of treatment "both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-300 (9th Cir. 1999) (internal quotation marks omitted) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).

Second, Plaintiff's treatment records do document some mental health treatment, during which Plaintiff worked on ways to cope with his depression. (*See*

AR 414, 417, 424-26.) The ALJ was incorrect to assert that Plaintiff had not had any mental health counseling or treatment. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion).

Moreover, Plaintiff primarily testified about his physical impairments and limitations. (*See* AR 30-34.) The entirety of Plaintiff's testimony regarding his depression is contained in the following exchange between Plaintiff and his counsel:

> Q: Are you taking any medication for depression?
> A: No, but I did have classes that lasted six months for psychological help.
> Q: Okay, when did that end?
> A: Approximately a month and a half ago.

(AR 33-34.) Plaintiff's limited mental health treatment is not a legitimate reason to discredit his subjective complaints about his physical symptoms and limitations.

The Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### 4. Conclusion

Because the Court found that two of the ALJ's reasons for discounting Plaintiff's credibility—activities of daily living and lack of mental health treatment—are not clear and convincing, the Court must decide whether the ALJ's reliance on those reasons was harmless error. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). The relevant inquiry "is not whether the ALJ would have made a different decision absent any error," but whether the ALJ's decision is still "legally valid, despite such error." *Id.* The "remaining reasoning *and ultimate credibility determination* [must be] . . . supported by substantial evidence in the record." *Id.* (emphasis in original) (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)). Here, given the discussion above concerning the lack of objective medical evidence and Plaintiff's

routine and conservative treatment, the Court concludes the ALJ's credibility finding is legally valid and supported by substantial evidence.

### B. The RFC Is Supported By Substantial Evidence

Plaintiff argues that the ALJ failed to properly consider the medical evidence. (JS 4.) The Commissioner argues that the evidence of record supports the ALJ's RFC assessment. (JS 6-8.)

#### 1. Applicable Legal Standards

The ALJ is responsible for assessing a claimant's RFC "based on all of the relevant medical and other evidence." 20 CFR §§ 404.1545(a)(3), 404.1546(c). In doing so, the ALJ may consider any statements provided by medical sources, including statements that are not based on formal medical examinations. *See* 20 CFR §§ 404.1513(a), 404.1545(a)(3). An ALJ's determination of a claimant's RFC must be affirmed "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *accord Morgan*, 169 F.3d at 599. "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (citation omitted).

#### 2. Discussion

In determining Plaintiff's RFC, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . [and] also considered opinion evidence" in accordance with social security regulations. (AR 14.)

As discussed above, the ALJ thoroughly summarized the objective medical evidence and found that it did not identify an impairment that was as severe as Plaintiff alleged. (*See* AR 15-16.) The ALJ also gave "great weight" to the opinion of John W. Pollard, M.D., a medical expert specializing in internal medicine, who reviewed Plaintiff's medical evidence and testified at the administrative hearing.

13

(AR 16; *see* AR 24-29.) Dr. Pollard summarized Plaintiff's medical records and found that he was capable of medium work, with occasional climbing of ladders, no extremes of heat and cold, and no working at unprotected heights due to the possibility of hypoglycemia. (AR 26-29.)

Plaintiff contends that his impairments preclude work at the medium level and that he is unable to perform his previous work on a full-time basis. (JS 5.) Plaintiff therefore argues that the ALJ erred by adopting the medical expert's verbatim testimony regarding Plaintiff's limitations. (*Id.*) However, as the ALJ noted, no treating physician provided an opinion on Plaintiff's physical limitations. (AR 16.) The ALJ considered the "totality of evidence" and gave the sole opinion testimony "great weight." (*Id.*) In the absence of a contrary opinion by a treating physician, the ALJ was entitled to rely upon the consultative opinion of Dr. Pollard. *See Morgan*, 169 F.3d at 600 ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.") (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)); *Ruiz v. Colvin*, 638 F. App'x 604, 606 (9th Cir. 2016) (finding that the ALJ did not err in giving the greatest weight to non-examining state agency medical consultants because "the ALJ found their opinions consistent with the greater medical record, progress and treating notes, and [the plaintiff]'s description of her daily activities"); *Ortiz v. Astrue*, 2009 WL 1516320, at *8 (E.D. Cal. May 29, 2009) (finding that the ALJ properly considered the medical evidence when no treating physician indicated any specific functional limitations and no treating physician's opinion contradicted the opinions of the state agency medical consultants).

"Based on the totality of the evidence," the ALJ concluded that Plaintiff's pain is caused by degenerative changes and osteoarthritis, and Plaintiff's impairments limit his ability to climb ladders, work at extremes of heat or cold, and work at unprotected heights. (AR 17.) The ALJ acknowledged that Plaintiff has

limitations in his ability to perform some work functions, but the ALJ determined that the "evidence as a whole" did not establish that Plaintiff is unable to perform work that is within the range of the RFC. (*Id.*)

In sum, the Court finds that the ALJ's RFC assessment is supported by substantial evidence. *See Arrieta v. Astrue*, 301 F. App'x 713, 715 (9th Cir. 2008) (finding that substantial evidence supported the RFC determination when the ALJ properly evaluated the opinion evidence and relied on supporting medical reports and testimony).

### C. The ALJ's Step Four Findings are Supported By Substantial Evidence

At step four, the ALJ relied on the VE's testimony that Plaintiff's past relevant work as a drywall applicator was consistent with the assessed RFC. (AR 17.) The ALJ therefore concluded that Plaintiff was able to perform his past work as it is actually and generally performed. (AR 18.)

Plaintiff contends that that ALJ failed to properly develop the record and erred in relying on the VE's "defective" testimony to find that Plaintiff was capable of performing his past relevant work. (JS 16.) The claimant has the burden of proving disability and showing that he cannot perform his past relevant work. *Burch*, 400 F.3d at 679; *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). However, "the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered," even when the claimant is represented by counsel. *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). This duty to develop the record is triggered "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing *Tonapetyan*, 242 F.3d at 1150).

In his testimony and Work History Report, Plaintiff asserted that he frequently lifted 50 pounds without the assistance of equipment or devices. (AR

30-31, 204-13.) Plaintiff explained that he cut drywall and carried the pieces a distance of up to 25 feet. (AR 205-13.) Plaintiff also provided information about his job's requirements for sitting, standing, and walking, among other activities. (*Id.*) Plaintiff's testimony and Work History Report therefore provide an adequate record upon which the ALJ could evaluate the nature of Plaintiff's past work. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (stating that a claimant's own testimony about his past work is "highly probative" of the work's requirements). The ALJ did not err in not further developing the record on this issue. *See Mayes*, 276 F.3d at 459-60.

Based on Plaintiff's description, the VE stated that Plaintiff's past work was consistent with the Dictionary of Occupational Titles ("DOT") listing of drywall applicator. (*See* AR 34.) The ALJ posed a hypothetical to the VE that presented the same limitations as contained in Plaintiff's RFC, and the VE testified that someone with those limitations "should be able to" perform the work of a drywall applicator. (AR 34-35.) Plaintiff's counsel declined to examine the VE or challenge the requirements of this occupation. (*See* AR 35-36.)

Plaintiff argues that the occupation of drywall applicator is "sometimes physically strenuous" and that a detailed description of a drywall applicator's duties includes potential hazards, such as working at heights, that are prohibited in his RFC. (JS 17.) To support this contention, Plaintiff provides a compilation of information and statistics from, *inter alia*, the United States Bureau of Labor Statistics. (*See* JS, ex. A, at 5-6.) But the DOT listing upon which the VE relied does not present these additional hazards, and to the extent that working at heights or on ladders may be required, the listing limits climbing to "occasionally." *See* DICOT 842.684-014, 1991 WL 681861; *see also Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) ("[T]he Social Security Administration relies primarily on the Dictionary of Occupational Titles for 'information about the requirements of work in the national economy.'" (quoting Soc. Sec. Reg. 00-4p, 2000 WL 1898704

at *2)). Furthermore, Plaintiff did not assert that any of these hazards were present as he actually performed the job. (*See* AR 30-31, 204-13.) Plaintiff's own description of his past work is also consistent with the limitations found in his RFC. (*Compare* AR 14 *with* AR 30-31, 204-13.)

Accordingly, the Court finds that the ALJ did not err in relying on the VE's testimony that Plaintiff could perform his past work as it was actually and generally performed.

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: February 2, 2018

/s/ Rozella A. Oliver
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**